McCarthy, J. (dissenting).
Defendant is entitled to a reversal of his judgment of conviction because his 6th Amendment rights to confront and cross-examine adverse witnesses were violated by County Court’s failure to turn over to defendant certain crit *1011 ical mental health records pertaining to the victim. Defendant was entitled to the undisclosed records pursuant to controlling Court of Appeals precedent. The undisclosed records all raise issues that would affect the victim’s credibility or her ability to recall events, and some of the undisclosed records would be extremely damaging to the People’s case. We, therefore, respectfully dissent.
County Court followed the proper procedure by conducting an in camera review of the victim’s mental health records to balance defendant’s 6th Amendment rights to confront and cross-examine adverse witnesses with the public interest in keeping certain matters confidential (see People v Gissendanner, 48 NY2d 543, 549-551 [1979]; People v Boyea, 222 AD2d 937, 938-939 [1995], lv denied 88 NY2d 934 [1996]). Confidential records should only be turned over to the defense if they contain information that is “relevant and material to the determination of guilt or innocence” (People v Gissendanner, 48 NY2d at 548), such as “evidence that the victim has a history of hallucinations, sexual fantasies or false reports of sexual attacks” (People v Fish, 235 AD2d 578, 580 [1997], lv denied 89 NY2d 1092 [1997]; see People v Brown, 24 AD3d 884, 887 [2005], lv denied 6 NY3d 832 [2006]).
As the majority notes, the 28 pages of mental health records provided to the defense by County Court—out of the thousands of pages reviewed in camera—contain statements about the victim’s history of psychiatric hospitalizations, hallucinations and preoccupation with talking about sex. Contrary to the majority’s conclusion, however, these 28 pages do not “cover all of the victim’s relevant and material mental health issues.” We acknowledge that some of the undisclosed records would have been, in some respects, redundant, as they include, among other things, some of the same material as the records that were provided.[1] But, contrary to the majority’s assertion, criminal defendants are entitled to more than just a “sample” of documents addressing a key witness’s mental health problems that could affect his or her testimony. In a case such as this, which the majority correctly characterizes as presenting “a classic he- *1012 said she-said credibility determination,” defendant must be allowed to consider and explore all legitimate avenues of information relevant to his defense and to the victim’s testimony and potential cross-examination. The question here is not whether County Court should have permitted the defense to enter certain documents into evidence or ask the victim about certain topics at trial (compare People v Mandel, 48 NY2d 952, 953-954 [1979], appeal dismissed and cert denied 446 US 949 [1980]), but whether the court should have provided defendant certain records that would have allowed the defense to investigate information contained therein to determine if admissible evidence could be gathered or proper questions could be formulated. More records should have been provided to defendant, addressing all of the victim’s relevant mental health issues, so that defense counsel could fully investigate, prepare and advocate for defendant.[2]
Certain records that were not provided to defendant relate to the victim’s ability to recall events. “Where a primary prosecution witness is shown to suffer from a psychiatric condition, the defense is entitled to show that the witness’s capacity to perceive and recall events was impaired by that condition” (People v Baranek, 287 AD2d 74, 78 [2001] [citations omitted]; see People v Rensing, 14 NY2d 210, 213-214 [1964]). While some disclosed records mentioned that the victim suffered from epilepsy or grand mal seizures in the past, those records did not associate her seizure activity with possible memory loss as the undisclosed records did. A July 2006 record[3] discussed her history of seizures, which condition was treated successfully with medication, but raised a question of possible seizure activity due to episodes where she ended up in places and could not remember going there, such as walking along a busy highway. An August 2006 record also referred to times when the victim wound up on a highway and spent the night in a shelter but could not remember how she got there. Similarly, a June 2006 record noted “recent dissociative[4] episodes [without] visible seizure activity” for which the author sought a neurological *1013 consultation. An October 2006 record noted “significant short term memory loss.” According to a May 2007 record, the victim talked about times when she was out of control and related how it was sometimes scary to learn afterward what she had done or said because, at times, she has had no recollection of the events. A progress note from June 2008 includes information given by the victim’s mother that the victim acted strangely, related a feeling of bugs crawling on her face and said that she had taken morphine. An August 2008 psychiatric assessment found that the victim’s memory is selective, namely that she admits not being able to remember good experiences with a person if she had bad experiences with that person. This last record could be especially important, considering defendant’s testimony that they had consensual sex and struggled afterward when the victim attempted to take his money. Defense counsel could have explored whether the victim was unable to remember any good experiences with defendant due to this subsequent bad experience of the struggle over money, making defendant’s testimony more plausible (see People v Hunter, 11 NY3d 1, 6-7 [2008]). All of these records raise questions as to the victim’s ability to accurately recall the details of the alleged rape, making the records relevant and material to the determination of defendant’s guilt or innocence (see People v Baranek, 287 AD2d at 79). These records were not merely redundant, because the records provided by County Court did not address these topics. Thus, defendant was entitled to all of these undisclosed records.
Records also mention that the victim has suffered flashbacks from previous sexual abuse. This was noted in July 2006. While the majority correctly notes that a disclosed record from June 2006 mentions that the victim reported flashbacks, it is unclear if that record is relating the flashbacks to prior sexual abuse or physical abuse. Disclosure of additional records could have helped to clarify that ambiguity. A March 2008 record mentioned that the victim was “experiencing increased flashbacks of prior abuse.” Another record from that same month discussed the flashbacks and noted that they were triggered by, among other things, role playing in consensual sex with her boyfriend. This is another topic that defense counsel could have investigated in preparing for trial.
Additionally, a July 2006 record included the summary that the victim had “a very poor perception of reality with distortions in her interpersonal relationships.” That record also noted the victim’s wishful thinking regarding relationships with males that she had just met, that she offered sexual favors to make friends, and that she became extremely upset when these *1014 relationships did not last. Similarly, a January 2008 record noted that the victim was adamant that she had a realistic plan for her new boyfriend—whom she met online but had never met in person, was more than 10 years older than her and lived out of state—to move to New York within a month and live with her. The therapist who wrote the note found that the victim was fixated on this fantasy, which the victim considered her reality, of a relationship with this man she recently met online. A June 2008 record indicated that the victim was invested in the fantasy of an ideal relationship. Proof of these fantasies and misconceptions of her relationships with males was also relevant and material to the defense.
Also relevant were records of prior allegations of sexual abuse that were possibly false. Evidence of a prior rape complaint is admissible if there is sufficient proof that the complaint was false, and it suggests “a pattern casting substantial doubt on the validity of the charges made by the victim” or “indicate[s] a significant probative relation to such charges” (People v Mandel, 48 NY2d at 953; see People v Blackman, 90 AD3d 1304, 1310 [2011], lv denied 19 NY3d 971 [2012]; People v Pereau, 45 AD3d 978, 980 [2007], lv denied 9 NY3d 1037 [2008]). In footnote 4 of its opinion, the majority mentions one October 2006 undisclosed mental health record containing information about a possible false allegation of sexual abuse, but dismisses the victim’s allegations that her father “tried to rape her” and “pinned her up against the wall in a sexual position” by saying that “[t]he only suggestions that the allegation was false” came from a mental health worker who listed the allegation as “unfounded” and the victim’s mother’s “opinion that the father never sexually abused the victim.” Although the mental health records do not contain more details of the alleged attack, the records do not indicate that the mother’s statements are mere “opinion”; one states that the mother “did continue to deny that [the victim’s] father ever sexually abused her.” This supports disclosure to defendant so he could investigate the details of the purportedly false allegations prior to trial. Considering that the mother lived with both her husband—who is the victim’s father and the alleged perpetrator—and the victim, the mother’s statement that the abuse did not happen was an outright denial by a fact witness rather than a mere “opinion.” When a female claims that a male “tried to rape her,” the alleged conduct is inherently sexual in nature. Either the victim’s mother and a mental health worker concluded that the victim fabricated the allegations or they blindly ignored clear allegations of sexual abuse. The physical abuse by the father was apparently reported to authorities and resulted in an indicated report of abuse; the *1015 records do not clearly state whether the alleged attempted rape was similarly reported or investigated. The record mentioned by the majority states on its face that the victim’s sex abuse allegations against her father were “unfounded,” but it is unclear whether this term was used in its legal sense, as in the context of child abuse allegations (see Social Services Law § 422 [5]; 18 NYCRR 433.2 [1]).
The majority states repeatedly that this evidence would not be admissible, but that is not the standard. Regardless of admissibility at trial, pursuant to controlling Court of Appeals case law, defendant was entitled to records that are relevant to a potentially false allegation of sexual abuse so that he could have investigated that claim prior to trial, consistent with his 6th Amendment right to cross-examine his accuser. Defendant was not even aware that this report existed, but he could have tried to establish the falsity of this prior claim if the record were disclosed, and he would only be permitted to discuss it in front of the jury if he “established a good faith ‘basis for the allegation that the prior complaint was false’ ” (People v Bridgeland, 19 AD3d 1122, 1123 [2005], quoting People v Gozdalski, 239 AD2d 896, 897 [1997], lv denied 90 NY2d 858 [1997]). The first mention of alleged sexual abuse of the victim by her father appears in a July 2004 record, after she revealed details of an attempted rape by him. Throughout numerous intake reports and mental health histories taken during the ensuing years, answers to a question about past physical and sexual abuse include statements about physical abuse by the father and sexual abuse by others,[5] but they do not mention sexual abuse by the father. Other records mention possible sexual abuse in the home, without explanation.
The majority refers to the lack of proof that the victim ever recanted these allegations. Two years after this undisclosed 2006 report, the victim continued to insist that her father sexually abused her. A March 2008 record discussed the victim’s regressive behavior as related to her “recent disclosures” of sexual abuse by her father.[6] That same record noted that the victim’s mother “was able to be more genuine and spoke openly about past traumas that [the victim] experienced,” but—despite the victim’s insistence and lack of recantation—the note also *1016 stated that the mother continued to deny that the victim was ever sexually abused by her father. The mother had been separated from the father since 2004 and the record discloses that she harbored ill feelings towards him, making it unlikely that the mother was denying the abuse out of loyalty to him. A July 2008 record also notes that the victim has alluded to past sexual abuse that was not substantiated by the mother.
These records alone may have provided defendant with a good faith basis that the victim’s prior rape allegation against her father was false. Even if they were not sufficient to prove falsity by themselves, defense counsel could have used these records as the basis for an investigation and a subpoena of child protective services records regarding unfounded reports (see generally Social Services Law § 422 [4] [A] [e]). Although there are differences between a complaint of attempted rape of a young teen by her father and a complaint by an older teen of date rape, the circumstances of the prior allegation here suggest a pattern, casting doubt on the validity of the charge at issue at defendant’s trial (see People v Bridgeland, 19 AD3d at 1123-1124; compare People v Hunter, 11 NY3d at 7), and “indicate a significant probative relation to such charge! ]” (People v Mandel, 48 NY2d at 953). While the majority finds the rape by defendant as too unlike the alleged attempted rape by the victim’s father, at the very least defendant had a right to be advised of the prior allegation and provided an opportunity to address the similarity or presence of a pattern. When considered in conjunction with the many undisclosed records regarding the victim’s impaired memory, hallucinations, ability to recall events, sexual fantasies and flashbacks, the failure to disclose these records was error. The undisclosed records all raise issues that would affect the victim’s credibility or ability to recall events, and the allegations of prior sexual assault—if proven to be false—would be extremely damaging to the People’s case.[7] Regardless of their admissibility at trial, defendant was entitled to be aware of and afforded the opportunity to investigate these matters prior to trial.[8] By not disclosing these records, County Court deprived defendant of the ability to fully prepare his defense, in violation of his 6th Amendment rights to confront and cross-examine the key adverse witness. He is, therefore, entitled to a new trial.
*1017 Mercure, J.P., concurs. Ordered that the judgment is affirmed.

. County Court provided records noting that the victim experienced visual and auditory hallucinations at different times between 2003 and 2007. Other records indicated earlier hallucinations, gave more details on some of the more recent ones and noted that the victim denied that what she sensed was a hallucination. Although those records probably should have been turned over as well, we will not go so far as to say that it was an abuse of discretion for the court to have limited the number of documents it provided that contain similar information. On remittal, however, we would provide those documents to defendant as well.

. Some of the records that were disclosed did not contain the name of the author, the source of information, the date they were created or where the original record was located. Such information should have been provided, if available (and it generally was), so that defense counsel could place the information in context. For example, hallucinations in 2003 may not be as relevant or important as hallucinations that occurred closer in time to the incident.

. None of the records referred to in this dissent by a specific month and year were disclosed to defendant; all of them should have been.

. This term refers to a detachment from one’s surroundings, consciousness, memory or identity.

. The answers were also inconsistent regarding her prior sexual abuse history that apparently is not contested, sometimes mentioning an incident when she was seven years old, sometimes mentioning an incident when she was 12, and sometimes including both incidents.

. This record does not refer to the 2004 or 2006 records of the victim’s prior disclosure.

. Prior to trial, the People offered defendant a plea to a misdemeanor and time served, presumably based on the People’s recognition of the serious problems with the victim’s credibility.

. Compared to the 28 pages that County Court provided to the defense, there are an additional 34 pages that, pursuant to prevailing case law, should also have been provided. By our calculations, this means that when preparing his defense prior to trial, defendant had less than 50% of the documents to which he was entitled.